Nancy Mulholland's Estate.   Appeal of Godfrey Fisher.

*Guardian and ward—Investment by guardian of ward's money in his own business—Interest—Commissions.*

Where a guardian, instead of investing his ward's money in securities approved by law, uses a portion of it in his own business, and so mingles the same with his own that it is impossible to trace investments, he will be properly surcharged with interest, and the court would be justified in rejecting his entire claim for commissions.

Argued April 21, 1896.   Appeal No. 127, July T., 1895, by Godfrey Fisher, from decree of O. C. Centre Co., dismissing exceptions to auditor's report.   Before STERRETT, C. J., MC-COLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Exceptions to auditor's report.

The auditor, H. C. Quigley, Esq., reported as follows :

It appears from the record and oral evidence, first, that Godfrey Fisher was on the 29th of January, 1885, appointed guardian of the person and estate of Nancy Mulholland, and having first filed his bond, which was duly approved, proceeded immediately to assume the responsibility of his said trust.   Second, that the estate of said ward which came into the hands of said guardian consisted of cash received from various parties at various times during the periods of 1886 to 1892, inclusive.   Third, that the account as filed by Mr. Fisher shows a balance due the estate of $9,232.28, $7,000 of which were paid before the filing of the report, and $1,000 of which were paid soon thereafter.

Your auditor, upon investigation of the facts, the testimony of which is hereto attached, finds that [Mr. Fisher was grossly negligent in the management of this estate, showing by his own testimony that he made practically no investments for his ward; part of the money being invested with his own funds in the First National Bank of Clearfield, part of it in his own name in the banking house of Cochran, Payne & McCormick, of Williamsport, part of it he used for purchase of lands for himself in his own name, and part of it was loaned to his son with which to purchase western lands,] [1] and upon a question of Mr. Love he replied that these were all the investments he made or tried to make.

The evidence also shows [that Mr. Fisher was grossly negligent in keeping his account with his ward, he appearing before the auditor with a small hand book into which the account had been copied about one year ago from various papers, and which said book, a copy of the items of which is added to the testimony of Mr. Fisher, contains very little information for the use of the auditor in determining the amounts of interest which are due the ward on account of the absence of specific dates]. [2]

As to the exceptions filed to the account, your auditor will dispose of them in the following manner:

First exception: " The accountant charges himself as of 1886, no date, with the sum $2,206.20, whereas the records show that he received February 7, 1885, the sum of $2,406.20 of his ward's money, and that the interest thereon amounts to the sum of at least $1,370, for which he does not account and with which he should be charged, and is therefore erroneous."

In reply to this your auditor finds, and it is not disputed, that the accountant should have charged himself with the sum of $2,406.20 instead of $2,206.20, as the records show that he received on February 7, 1885, the sum of $2,406.20.   As to the amount of interest which he should have charged himself with —as [there is no evidence to support the fact that he made any attempt to invest this money, or in fact any of it, which was afterwards received, but on the contrary used it as his own, and for his own personal gain, he by so doing, in the opinion of the auditor, aided by the decisions of the Supreme Court as found in 5 Kulp, page 207, 3 Penny 243, 42 L. I. 236, and 30 P. L. J. 385, forfeited his rights to be allowed a reasonable time for the investment of the same, as he must be treated as a borrower, and is properly chargeable for interest from the date of the receipt of the various amounts until the date of the filing the account, which is accordingly done and carried out in the restated account, embodied in this report.] [3]

Second exception: " The accountant charges himself as having received in 1886, no date, $255.91, whereas as per the records, he received the same December 12, 1885, on which sum he does not charge himself with interest thereon, and should be charged with at least $130.84 interest on the same."

In reply to this your auditor finds that the item of $255.91 was received December 12, 1885, and the accountant is chargeable for interest from that date until the filing of the account.

Third exception: "The accountant charges himself as of 1886, no date, with two items. Received from John G. Uzzle the two items amounting to the sum of $927.64, on which he fails to charge himself with interest thereon, and that said sums were paid to him prior to 1886, and he should be charged with the sum of at least $477.73, interest on said sum."

In reply to this your auditor finds that it is true that the accountant charges himself with two items amounting to the sum of $927.64. The first item amounting to $147.09 was received by him as shown by the final account of John G. Uzzle, guardian of Mary M. Mulholland, confirmed April 24, 1889, on May 1, 1885, and he is therefore charged with interest from that date until the filing of his account. The other item of $780.54 is made up of three items as shown by Mr. Uzzle's account as follows: One item of $374.94 which the account shows was paid Mr. Fisher March 25, 1886, one item of $116.77 which shows payment to Mr. Fisher April 24, 1886, one item of $117.10 which shows payment to Mr. Fisher April 24, 1886, and another item of $173.29 which shows payment to Mr. Fisher some time in 1887. On these various items the ward is entitled to credit for interest from the dates of the payment to Mr. Fisher to the filing of his account. As to the last item of $173.29, your auditor has charged Mr. Fisher with interest from the 1st of July, 1887—there being no month given he has calculated from the middle of the year, as the amount was received on account of the sale of timber rafts, and it is presumed to have been paid by that time, as the other items in previous years derived from the same source were paid not later than April.

Fourth exception: "That all of the items, with which the accountant charges himself, are without date and he fails to charge himself with the interest thereon, and are erroneous and irregular and the whole account is illegally stated."

This, in a measure is true, although possibly a little overdrawn.

Fifth exception: "The accountant claims credit for compensation the sum of $800 and takes credit for the same, and also takes credit for a number of items for expenses in addition thereto; that said compensation is exorbitant, excessive and illegal as well as the sundry items claimed for expenses."

Had the accountant shown any disposition on his part to properly manage and invest the moneys intrusted to his care, the amount of his compensation, $800, which is nearly eight per cent of the whole amount of the ward's estate received by him, would not be so carefully looked into, but under the circumstances of this case your auditor has decided to allow the sum of five per cent as his commissions, which amount we think will fully pay him for his services. There might be a question as to the allowance of any commission, but considering the fact that the auditor has charged him with interest on moneys, from date of receiving them, it would be rather hard not to allow him a reasonable compensation, which we think is fully covered by a fee of five per cent on the amount collected in addition to the amounts claimed credit for in the account for expenses, although in a great many instances these are vague, no vouchers having been filed.

As to the sixth, seventh, eighth and ninth exceptions, your auditor would respectfully suggest a comparison of the account as filed by Mr. Fisher with the restated account which is embodied in this report.

There is one other item of $225 which was received by Mr. Fisher September 1, 1891, with which he has not charged himself, and which is not disputed, this amount having been received at the August sessions of court, 1891, from        Hoover in settlement of a case, which amount should be charged to the accountant with interest, from September 1, 1891, which is accordingly done.

Exceptions to the auditor's report were in part sustained, ARCHBALD, P. J., of the 45th judicial district, specially presiding, filing the following opinion:

[The facts in this case are not disputed; they all appear either by admitted vouchers, or have been drawn out of the accountant's own mouth upon the witness stand. They plainly show that he failed to exercise the care demanded in the management of a trust estate. He not only did not invest the moneys he received in approved real estate mortgages, or other securities which the law recognizes; but he did not even seek an investment of any such kind. The only loans made were a small one to a man named Brown, and another to this the account-

ant's son to put into western land, both of which ended disastrously. He also used over $2,000 to buy land for himself, and deposited the rest in the bank in his own name, a small portion in the First National Bank at Clearfield which failed, and the remainder with the private banking firm of Cochran, Payne & McCormick of Williamsport. While these deposits strictly speaking were not mingled with his own money, yet they were made in his individual name, and stood in consequence at the risk of his personal credit. It cannot be considered, therefore, that they were really kept distinct and separate from his own private funds as the law requires. The truth is that while the accountant, in his own mind, may have individuated the estate of his own ward, according to all outward observance he used and disposed of it pretty much as his own. Under the circumstances he is properly held not only for the bad investment, if investment it can be called—of that part of it which has been lost, but also for interest upon the whole of it, the same as though he had derived a direct benefit from its use. He practically has had the use of it, and must account accordingly.] [4] The case is substantially within the ruling in Copenheffer's Appeal, 3 Penny. 243, and other kindred cases. Both with regard to the general charges of interest and the reduction of the accountant's compensation I see no occasion to disturb the findings of the auditor.

Some corrections, however, in the amount of interest to be charged, ought in my judgment to be made. The accountant on June 21, 1894, made payment to his ward of $7,000, and was entitled to have the running of interest stopped on that amount from that date. This has only been partially done. On items aggregating about $3,600 the interest has been calculated only to that date, but upon about $5,000 of items it has been carried forward to July 27, the date of filing the account. Without going through the process, I may state that this involves an excess of interest of $21.46, which should come out of that charged.

No account moreover has been made in the same connection of the amounts expended from time to time by the guardian in his ward's behalf. These aggregate, all told, about $450, and extend over a period of eight years. No accurate calculation can well be made, in which the separate items shall be credited

strictly as they were paid, but a sufficiently satisfactory result can be reached by averaging the interest, at one half of the time over which these disbursements extend. This amounts as I calculate to $108, and should also be allowed for.

In the same way the accountant, in reduction of interest, is entitled so have his compensation applied as a credit from time to time as it accrued, and not deducted in a lump at the foot of the account: Say v. Barnes, 4 S. & R. 112. We may regard this as earned from year to year, and to be deducted and applied accordingly. Without going through this exact process, we may now credit the average interest upon the whole sum which would amount to about $117.

The three deductions on account of interest which are thus to be made aggregrate the sum of $246.46, and reduce the balance due from the accountant by that amount, making it $3,799, instead of $4,045.46, as found by the auditor. To that extent the exceptions are sustained, but otherwise they are overruled. As thus modified the report of the auditor is confirmed, the expense of the audit to be paid by accountant individually.

*Errors assigned* were above rulings, quoting them.

*Calvin M. Bower, Ellis L. Orvis* with him, for appellant.— The ward's estate amounted to the sum of $9,759.48. It was received by the guardian in small amounts mostly. Under these circumstances he was entitled to reasonable time to invest: Worrell's App., 23 Pa. 44; Hughes's App., 53 Pa. 500; Eyster's App., 16 Pa. 372; Huffer's App., 2 Grant, 343.

No interest can be charged on the balance after filing of the account: Deitrick v. Heft, 5 Pa. 87; McElhenny's App., 46 Pa. 347.

A guardian is entitled to a reasonable counsel fee for advice in the settlement of his account and the conduct of the estate: Furney's App., 12 W. N. C. 82.

This Court has repeatedly held that where a guardian has used the ward's money, while he was charged with interest after a reasonable time, he was allowed compensation, and a reasonable sum to remain without interest in his hands for expenses, etc.: Say v. Barnes, 4 S. & R. 112; Baker's App., 8 S. & R. 12; Luken's App., 7 W. & S. 48; Bachman's Est., 1 Clark, 253; Karr v. Karr, 6 Dana (Ky.), 3; White v. Parker, 8 Bar-

bour (N. Y.), 48; Owens v. Pebles, 42 Alabama, 338; Ashley v. Martin, 50 Alabama, 537; Pettus v. Suttan, 10 South Carolina, 336; Bond v. Lockwood, 33 Illinois, 212; Knowlton v. Bradley, 17 New Hampshire, 458.

*W. F. Reeder*, for appellee, was not heard.

PER CURIAM, May 11, 1896:

This record discloses no error, of which appellant has any just reason to complain. On the contrary he appears to have been considerately and leniently dealt with by the learned auditor and the court below. His mismanagement of the trust—using his ward's funds in his own business, and so mingling the same with his own that it was impossible to trace investments, etc.— was such as to require the surcharges of interest, etc., and would also have justified the rejection of his entire claim for commissions; but, as to that, " the appellee does not complain," and hence the question is not properly before us.

There is nothing in either of the specifications of error that requires special notice. The questions involved were sufficiently considered by the court below.

Decree affirmed on the opinion of the learned president of the 45th judicial district, who specially presided at the hearing, and appeal dismissed at appellant's costs.